Good morning, Your Honors. My name is Christie Shuto. I represent the Petitioner Felipe Ramirez-Valdes. May it please the Court, I'd like to focus my time this morning on the jurisdictional issue. We disagree with Respondent's argument that Petitioner's extraordinary circumstances claim is based in disputed facts. Our dispute is whether or not the established facts meet the extraordinary circumstances standard. We submit that that is a mixed question of law and fact over which the Court maintains jurisdiction. We do not dispute any of the facts that the I.J. relied on to deny the extraordinary circumstances claim, but rather submit that the I.J. erred in applying the legal standard to the facts of this case. There's no negative credibility finding in this case. The I.J. acknowledged the fact that Petitioner sought treatment for depression as early as 2002, and there's undisputed evidence that Petitioner suffered depression and anxiety related to his claim. How much do we know about the degree of depression? Because I understand that it can be a genuinely and almost completely debilitating condition, but it can also be a condition, particularly with some treatment, that allows for a fairly high degree of functioning. What do we have in the record that tells us the degree of debilitation resulting from the depression? Well, the record shows a course of treatment that started in 2002, and I think that the documentary evidence from that period in time stated that there were problems with sleep, or I guess it wasn't that even when Petitioner was getting enough sleep, he was always feeling tired. That evidence doesn't show that he was on any course of medication. Then there's evidence from closer to the time when the asylum application was filed showing that Petitioner was taking Prozac, and there was a letter from his doctor stating that the depression and anxiety were severe and were related to the claim. We acknowledge there are facts in the case that show that he was working during the time that he was suffering the depression, and I think that was what the immigration judge relied on. And what's the standard under which we would review the IJ's determination that he was not so disabled as to come under the extraordinary circumstances heading? I think that would be a de novo standard because it's a – I think that if you look at the reasoning in the case law for why the court has jurisdiction, it interprets it to be a question of law, a mixed question of fact and law to be a question of law, so we would submit it's a de novo standard. Okay. Thank you. Can you clarify for me, counsel, what protected ground or grounds you're relying on that's the basis of the persecution? Yes, Your Honor. Two, one would be political opinion and the whistleblower doctrine, and that would relate to the persecution that occurred while the Petitioner was in the military. By his commanding officer, and there was a previous threat also after he reported what he believed were misconduct, to be misconduct to – he reported it up the chain of command and then received death threats for reporting incidents that he believed were misconduct. And then also membership in a particular social group as it relates to the fear that he will be persecuted by the cartels if he returns to Mexico because of his experience as a member of the military, and more specifically someone who was involved in the war against drug trafficking. And what social group is that specifically? That social group would be former members of the Mexican military who were involved in the war against drugs. Was there any indication that he's being targeted by the Zetas for revenge because of that? The evidence seems to me that he's being targeted by the Zetas. They're trying to recruit him. Yes, I think that's true. And there is an evidence that he left before. That was his fear, and that's why he left. So we don't have any evidence that they ever sought revenge after he fled, but that was the reason. Well, do we have any evidence that they sought revenge even before he fled? No, just that they were recruiting him. And so it's really a fear of future persecution that if he resists joining their ranks, he'll be assassinated. And is refusal to join a guerrilla group a protected ground? We've got a problem, I think, under Elias Zacharias. No, if you look at it in general, no. But I would submit that if you're targeted because of your former experience as a member of the military, then yes. That's how I would distinguish. So it's not just any recruit, he's a recruit because he's had the Special Forces training? Yes, sir. Okay. You're from Santa Rosa? I am. How are things there? It's nice. Good. A little colder than down here, but it's been a nice winter so far. All right. So I'm going to save the three minutes and 45 seconds. Thank you, Your Honor. All right. Good morning, Your Honors. May it please the Court, the assessed mercy of the Office of Immigration Mitigation, for the respondent. The first issue before the Court today is whether the Court should dismiss Ramirez's untimely asylum claim because it lacks jurisdiction over the agency's determination that he failed to establish extraordinary circumstances excusing his untimely filing, where Ramirez contests the agency's factual finding underlying this determination. The respondent's position today, in contrast to the petitioner, is that this is an issue of disputed fact. The factual dispute here is what caused him, essentially, to file his untimely application late. He claims that's depression. However, in the record, he gives several different reasons that he didn't file on time. At one point, he says that his employer was seeking legal status for him. At another point, he says that he wasn't aware of asylum. There's a factual dispute here as to what was the cause for his untimely filing. On top of that, not only is there a factual dispute as to whether depression was, in fact, the cause for his untimely filing, not simply the fact that he did not know about asylum or that he was relying on some other factor to ensure that he would have legal status in the country. He obviously knew he was not in legal status, and he was seeking legal status. The other factual dispute, of course, is, as Your Honors were inquiring, the depth and severity of this illness. That is a factual dispute here. The immigration judge made the finding that the government did not know if it was a contributing factor towards his untimely filing. That in and of itself is a factual dispute, and thus the Court lacks jurisdiction over the extraordinary circumstances finding. Secondly, because the only issue before the Court today is withholding of removal, the Court should deny Ramirez's withholding of removal claim because he failed to establish that a protected ground was one central reason for the past harm he experienced when that harm was firmly rooted in personal animosity toward him. Ramirez was also unable to show a clear probability of future persecution, where he failed to meet his burden of proof in showing that the individuals who were looking for him were Zetas, and even if he met the burden to show that the people who were searching for him were Zetas, he did not show that a protected ground was one central reason for the decision to recruit him. Any additional harm that Ramirez claimed based on his desertion from the Army does not constitute persecution, and he failed to show that a protected ground would be one central reason for any harm that he may experience based on this claim. Finally, Ramirez failed to show that he's more likely than not to be tortured in Mexico by or with the acquiescence of government officials. Since the record does not compel reversal of the agency's decision, the petition purview should be dismissed in part and denied in part. Do Your Honors have any questions? Sotomayor, what's likely to happen to him when he goes back to Mexico? He's a deserter from the military. Is it likely that he will be imprisoned? Well, in his affidavit, I believe in his testimony, he said that military desertion is a crime, but as we noted in our brief, the fact that he might be imprisoned on that basis or he might be reenlisted in the Army wasn't enough to show that he would be more likely than not to be persecuted or tortured upon return to Mexico. Well, if he is incarcerated because of his desertion, is there any reason that would mount to the level of probability to believe that his former, I'll stay away from the word persecutors, the people who have been giving him trouble in the military will come after him in any way? Well, Your Honors, there's – that simply is an unknown, and the burden of proof here is more likely than not, because essentially the most that he claims is that any punishment he may receive from leaving the military might be imprisonment or reenlistment. He certainly had a close relationship with one of his senior officers, and while he had some trouble there, I don't think it would claim to be persecution. He could be reassigned to another part of the military, and he doesn't claim that any punishment that he would receive simply from desertion would necessarily be persecution or torture. So he feels his burden of proof. I think punishment for desertion from the military doesn't qualify. I got that part. His ability to be transferred within the military, I think, is likely to be limited. Usually the soldiers don't get to decide where they're put. Well, certainly, but again, the burden here is more likely than not, because we are only talking about withholding a removal claim. So he has to show that he's more likely than not to be persecuted or tortured. And frankly, he does not sustain that burden here. The fact that he will possibly be reenlisted, it doesn't necessarily establish that he will be encountering the same, it seems in the record, seems to be only two people or a couple of people that he had difficulty with in the military previously. If there are no other... Well, Your Honor, he essentially states that it was simply a very close friendship between him and, I believe, his name is Carmona. I believe it was Lieutenant Carmona. That it was simply a close friendship, but that some of his fellow soldiers cast aspersions on it. And what was Ramirez's rank? I believe at that time he was simply a regular soldier or a private, essentially. So was he having a close relationship with the lieutenant? What does that mean? Well, it seems, according to his testimony, it seemed to be a friendship or a mentorship. They come from the same town? Actually, I don't know the basis of their friendship. Unfortunately, I can't recall what perhaps was the basis of their friendship. I just recall that they have a friendship, I certainly, from the record. Some of the people in the unit think that there may be some, I'll call it a romantic relationship between him and Carmona. Whether that's true or not, whether there is such a relationship or even whether the people in the unit say there is, he says there is. He says that that is the perception. Yes, that there were perceptions that there was more to their friendship than there. But, again, as we argued in our brief, any personal animosity that was, that came about because of that close friendship is simply not a protected ground. It is not a basis on which the Petitioner can claim withholding of removal simply because it's not a protected ground. It is simply, it was simply personal animosity based on this friendship. Well, but, I think, I think it's from some of the other matters that we've had that these close relationships and this talk about them having a romantic relationship, that's a relationship that is not well accepted in this culture. Your Honor, he never made a claim based on the aspersion of a romantic relationship between him and the lieutenant, or perception, I'm sorry. He never made a claim based solely on that. He simply called it a close friendship in which the other soldiers were jealous of because of this close friendship. But he did not make any claim based on any perception that they were simply in a romantic relationship and that that was why they were being targeted. He didn't, but there's some evidence that they believed that there was more to it than that, that the other soldiers did. And, you know, that's a reasonable inference. Well, he also claims that the soldiers only, that they were aware of this close friendship for quite some time, but then there was some point in which the people in his unit bought some beer over New Year's, and after that, when he told his commanding officer, perhaps because of their close friendship and the other people got in trouble, that that's when they really started harassing him. So simply, it doesn't, if the possible perception of a romantic relationship  So it would be, it wasn't exhausted before the agency. It certainly wasn't a protected ground that was claimed here. The simple claim was that he had a close friendship with one of his commanding officers, and because of that, he received some harassment from other military members, and that simply is personal animosity. But that was his commanding officer. Yes. It was his commanding officer that he had a close friendship with. The lieutenant. Yes. Where's the lieutenant now? He transferred out of his unit to another unit, but I don't believe that the record says where the lieutenant is at the time. He sort of gets lost after that. But the lieutenant, but his problems in the next unit continued because of his close friendship with that lieutenant, because the commanding officer in the next unit had worked or been a colleague of that lieutenant previously, and he disliked him, and so his problems continued in the unit that he transferred to. So, again, it's simply personal animosity here, and there's no nexus to a protected ground. If Your Honors have any more questions, thank you very much. Again, the Court should dismiss in part and deny in part this petition for review on the reasons that I discussed. Thank you very much. I'd like to just quickly go back to the jurisdictional argument and again state that we're not disputing the facts. Those are the facts. The dispute is whether or not the facts meet the standard, which is extraordinary circumstances. And then turning to the on account of issues in this case, there are a number of different issues in the record, and we would submit that characterizing all of them as being based in personal animosity or vendetta is erroneous, and that at least some of the central reasons for the persecution are protected grounds. And we would request that the Court grant the petition for review and remand to the agency. Well, the Zetas, who are the Zetas? It's one of the drug cartels, or I guess an enforcement arm of the drug cartel. They're former members of the military who were recruited because of their specialized knowledge in drug trafficking, and they were hired by, I think, the Gulf cartel to be the enforcement arm for drug smuggling. And what's the evidence that some of these Zetas came looking for Ramirez at his mother's house? It's really petitioner's fear. It's a fear. I mean, the people who came looking for him did not state their organization, which they would be unlikely to do if they were members of the cartel. They stated that they were former members of the military, and they had a job for a petitioner, and they were going to pay him well, and they wanted to talk to him. But our position is that it's a bit unreasonable to request documentary evidence from the cartel. It wouldn't be safe for a petitioner to do that. And the men didn't identify exactly who they were when they came to his house. Okay. Thank you. Thank you, Your Honor. That matter is submitted.
judges: Pregerson, Fletcher, Nguyen